■ In the Matter of CERENITHY ECKSTHINE B. and Another, Children Alleged to be Neglected. CHRISTIAN B., Appellant, COMMISSIONER OF ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent. [938 NYS2d 510]—

The record establishes, by a preponderance of the evidence, that there was a "substantial probability" that the father's untreated mental condition would place the children at imminent risk of harm if they were released to him (*Matter of Ronald Anthony G. [Sammantha J.]*, 83 AD3d 608 [2011]; Family Ct Act § 1012 [f]). The psychiatric records entered into evidence at the fact-finding hearing showed that the 20-year-old appellant-father had a history of multiple hospitalizations for unstable moods and aggressive behavior. Appellant was hospitalized in 2000 for choking his mother, and in 2003, after he again threatened to hurt his mother and siblings. During his 2003 hospitalization, he was diagnosed with bipolar disorder and attention deficit hyperactivity disorder. The nursing admission summary for this hospital stay stated that outpatient treatment had been unsuccessful due to appellant's noncompliance, and the psychiatric evaluation noted that appellant would not be "clear thinking" without his medication.

In 2007, appellant was again hospitalized and diagnosed with a major depressive disorder and a disruptive behavior disorder.

The intake psychiatric assessment form noted that he had not taken his medication for six months, and as a result, had become increasingly threatening and volatile, had trouble controlling his anger and had a high frequency of suicidal thoughts. The Nursing Treatment Plan included a finding that appellant was unable to find insight into the behaviors which precipitated his hospitalization, and noted his continued resistance to taking his medication.

The treating psychologist conducted an evaluation of appellant at the end of his nearly three-week hospitalization in 2007. The psychologist concluded that, based on appellant's limited capacity for introspection, cognitive deficiencies, and difficulty dealing with his emotions, appellant may give way to "explosive outbursts, periods of transient psychological disorganization, or gross lapses in impulse control" when his feelings are aroused. Although appellant was not determined to be psychotic, he was at an increased risk for suicidal and self-destructive behaviors. Notably, the doctor further concluded that appellant's disruptive behavior disorder would likely re-emerge rapidly once he was out of the structured and supportive hospital environment and returned to a more complex and demanding one. Lastly, appellant's treatment plan upon discharge included individual and group therapy as well as prescribed medication.

The mother of the children testified that she knew appellant was bipolar and he was in denial about his mental condition. She testified that she had never seen him take any medication, and that prior to the neglect petition being filed, he was not in therapy. The mother also stated that appellant engaged in erratic behavior that usually involved volatile mood swings. Appellant would become angry about inconsequential things, and then, moments later, act as if nothing happened. The foster mother for the children also testified regarding appellant's erratic and threatening behavior. The foster mother explained that she had received numerous text messages from appellant threatening her and her son.

Lastly, the caseworker's progress notes, which were admitted into evidence, stated that appellant admitted during an interview, the day before the neglect petition was filed, that he had been diagnosed as bipolar, and that he was hospitalized in 2008 for destruction of property, during which hospitalization he was again diagnosed as bipolar. Appellant also admitted during this interview that he was not receiving any mental health services.

Appellant's primary challenge to the neglect finding is that there is no link or causal connection between his mental

problems and any risk to the children (*Nicholson v Scoppetta*, 3 NY3d 357, 369 [2004]). Here, the evidence of appellant's mental illness is overwhelming; yet he was not in treatment nor was he seeking it. He had been hospitalized, on more than one occasion, due to noncompliance with outpatient treatment and medication that resulted in violent physical assaults and threats to his immediate family members (*Matter of Madeline R.*, 214 AD2d 445 [1995] ["proof of ongoing mental illness and the failure to follow through with aftercare medication, which results in a parent's inability to care for her children in the foreseeable future, is a sufficient basis for a finding of neglect"]).

In 2007, appellant's treating psychologist concluded that his behavior disorder would rapidly re-emerge once he was placed in more complex and demanding environments. At the time the petition was filed, the children were approximately 2½ years old and 4 months old. Nothing in the record supports the conclusion that appellant had the self-control, judgment and insight necessary to care for young children. Furthermore, as appellant's evaluating psychologist concluded, complex and potentially taxing situations could send appellant into a relapse fraught with psychological disorganization and gross lapses in impulse control. This is a scenario that could be very grave for appellant's young children, who are, due to their age, unable to defend against or report any mistreatment (*Matter of Noah Jeremiah J. [Kimberly J.]*, 81 AD3d 37, 44 [2010]). Although two years had passed since appellant's last hospital admission, the agency established that he did not enter into medical treatment nor was he compliant with medication requirements.

Appellant incorrectly contends that *Matter of Jayvien E. (Marisol T.)* (70 AD3d 430 [2010]) warrants reversal of the neglect finding. In *Jayvien E.*, after the appellant-mother gave birth to her son, a medical student reported overhearing her calling the baby "greedy" and "too much" (at 431). As a result, the hospital conducted a psychiatric evaluation of the mother. The subsequent patient care sheets, completed by nurses tending to the mother, noted that she engaged appropriately with her child and did not display any psychiatric symptoms. Further, the mother explained her comment was in reference to her son being hungry shortly after she had already fed him, and the agency failed to produce a witness that observed the mother's allegedly bizarre behavior.

Here, by contrast, the record, which includes testimony from the children's mother and foster mother, demonstrates that appellant had been diagnosed with a major depressive disorder and disruptive behavior disorder, and admitted to being bipolar.

He was, however, in denial about his mental condition, was not taking medication or in therapy, and required treatment to prevent a rapid re-emergence of his disorders and the attendant explosive outbursts or gross lapses in impulse control that could accompany such re-emergence. Concur—Tom, J.P., Catterson, DeGrasse, Richter and Manzanet-Daniels, JJ.